Good morning, and may it please the court. My name is Jeff Ellis. I'm appearing this morning on behalf of petitioner-appellant Louis DeVincentis. And what I'd like to do today is to confine my arguments to the first issue that is raised in Mr. DeVincentis' brief, the issue of ineffective assistance of counsel for failing to investigate facts that could have led to the suppression and exclusion of prior bad act evidence in the sex abuse prosecution. And I guess where I would like to start is back at the trial court where the trial court made some very specific findings about what were the salient facts that led to the admissibility and ultimately led to the persuasiveness of this prior bad act evidence that resulted eventually in Mr. DeVincentis' convictions. The trial court said that the prior bad act evidence demonstrates a common scheme or plan because Mr. DeVincentis in both instances wore only bikini underwear in his house in front of young girls. It was a form of grooming. It gave the impression that this was normal behavior. He asked whether his state of undress bothered them or if they minded how he was dressed. His lack of clothing on occasions prior to the specific incidents was a form of conscious grooming, which made it easier to move from nudity to physical skin-to-skin touch and eventually sexual behavior. The trial court continued saying he gained the trust of the girls by desensitizing them to his own nudity, by walking around nude or almost nude in front of them, which added a sense of normalcy to this behavior. This wasn't coincidental. It was a design or plan carried out in both cases. And those salient facts which led the trial court to conclude that the testimony of V.C. was admissible and that it added a crucial link to the facts of the case leading to DeVincentis' conviction were also the same facts that the Washington Supreme Court relied on on direct appeal when the Washington Supreme Court said that this type of information, this grooming pattern, if you will, made the evidence admissible. The Washington Supreme Court specifically says that similarity in result is not enough under state law to admit this evidence, but rather there needs to be a specific type of plan or scheme that is followed in both cases. Again, citing back to this trial court's ruling and saying these were the type of facts present here that resulted in the admission of this evidence. Going back then to this trial court's ruling, those are the exact facts that are disputed in the post-conviction affidavits of the witnesses. The witnesses say that V.C. was not present on very many occasions, that when she was present on one or two occasions that there was no walking around wearing only underwear, that there was no attempt to desensitize to nudity because she was never there. That no one was never there. I overstate, and thank you for correcting me, because she was only there on a few occasions, and on those occasions everything was normal. Mr. DeVincentis was fully dressed except for a brief period of time when he was on an exercising machine where he was wearing some jogging shorts and a T-shirt. And that was one of the crucial elements of the case, the acts on the exercise machine. Sure. And we don't dispute the fact that a sexual act occurred on the exercise machine. But it seems to me what you're driving at is tangential facts which don't go to the heart of the thrust of that testimony. They don't go to the heart of whether V.C. was sexually abused by Mr. DeVincentis. She was, and he admitted that he sexually abused her. And that's beyond dispute. They do go to the heart of whether there was a plan that existed both with V.C. and with the current victim that had common elements. And, again, the issue is not whether he sexually abused V.C. The question is whether he did so after this pattern of grooming. And what we presented is unrebutted post-conviction extra record evidence that says there was no pattern of grooming, that that would have been impossible because she was only there on so many few occasions. And when she was there, no grooming ever happened. And I think it's important to point out that the Washington Supreme Court, in setting its standard for admissibility of evidence, says that prior instances of sexual abuse are not admissible in a sexual abuse prosecution unless they are linked by this plan. Let me stop you there because I think it's too easy to go by what I think is the hard issue you have to confront, which is that these declarations from these witnesses you say should have been unearthed and have testimony presented, they, among other things, contested whether there was guilt in the first instance. I mean, there's a declaration that she denies that her father ever molested her. And yet you concede, because you can't do anything else right now, that at least in that respect the witness's testimony is going to be found not credible because that's not true. And so what tells us that these other witnesses are going to be believed by the trial court in order to secure the exclusion of the prior act testimony if, in fact, those witnesses turn out not to have testified truthfully or been knowledgeable about what is the key offense? Well, first of all, the only way to make that determination is through an evidentiary hearing. And we presented the declaration as deemed by the post-conviction court in state court, asked for an evidentiary hearing and were denied the evidentiary hearing both by the Washington Court of Appeals and by the Supreme Court. Again, when we filed our habeas in district court, we asked for an evidentiary hearing. And that's all we're asking for now is the rather modest relief of remand for an evidentiary hearing. With regard to the believability of the witnesses, I think that is up to the district court judge to make that ultimate determination. But focusing on the facts of the case. Well, here, the reason why it gives me concern, these new witnesses are supposed to make a big difference. Only these new witnesses deny that he committed the offense in the first place, which is now uncontestable. And so what is it that's going to cause any trier of fact to decide, well, these witnesses are really the ones that know what happened, although they don't know that the main thing happened? Well, they don't know because they didn't have firsthand, none of them had firsthand information and they didn't see the sexual abuse happening in front of them. But they certainly do know whether V.C. was a common visitor and whether she was groomed, not only in front of her, but in front of their whole family. Because that's what V.C. testifies to. I was over there. The whole Devencentis family was there, at least for most of the period of time. And here's what was happening. He was walking around wearing only underwear every time I was over there. That's just how it happened every time I was there. Now, his daughter, Marissa, testifies, or excuse me, in her declaration states, V.C. says that she was abused and that I was abused with her at the same time. And Marissa says, that never happened. It didn't happen to me. Now, she can't say whether it happened to Vanessa on some, or V.C., excuse me, I apologize. I know these people's names. Sometimes it's difficult to simply talk in initials, so I apologize. She says, it didn't happen to me. So that contradicts one of the facts. But again, the question in terms of the ineffectiveness and ultimately in terms of the admissibility of this evidence, according to Washington State law, is whether there was this grooming plan that applied in both the prior case and in the instant case. And those are the key facts. And on those facts, the witnesses all say the same thing. Now, I don't dispute for a moment that these witnesses wouldn't be cross-examined at the evidentiary hearing based on their bias, based on their interests, based on inconsistencies with what other people say, based even on the claim that I didn't see any sexual abuse happening. Certainly, it is not a given that these witnesses will be viewed as credible. But the only proper manner to test their credibility is through an evidentiary hearing. But, you know, this is, it would be different if this were on direct appeal. If you go back to the Washington Supreme Court, even if we credit your argument that it was ineffective assistance for the counsel not to follow up with the daughter, with whom he spoke apparently once, and then with the other members of the family, the Court concludes it wouldn't have made any difference in the outcome. So they do it on both prongs of the Strickland or, in the Washington case, State v. McFarland. So how, why is that an unreasonable application, the prejudice prong? Well, because the prejudice depends on the facts that are found, and there's no reliable method of finding the facts. And specifically, when you read the Washington Supreme Court's decision in the peer review. But we have the affidavits. We know the nature of what they would testify about. We do. And if the Washington Supreme Court had assumed the truth of those declarations and recognized the salient aspects of those declarations and then applied it to the ineffective assistance standard, I think we would be in a different place. I said even if the declarants had been called, so the reasonable probability of the outcome would have been different. But that follows the Washington Supreme Court saying, for instance, that his daughter, Marissa, didn't ever remember or didn't remember Vanessa V.C. being around too often. And therefore, Marissa's testimony would be essentially irrelevant. So they essentially come to the conclusion that because she didn't see V.C. around the House very much, her testimony has almost no probative value. But sometimes, and in this case, testimony saying, I didn't know her, she wasn't my best friend, she wasn't around, has all of the probative value in the world. And that's the problem with the Washington Supreme Court's decision is what it does is it looks to the issue of whether any of the post-conviction witnesses can definitively establish that no sexual abuse happened. And because the Washington Supreme Court finds that none of the witnesses can definitively eliminate that possibility, therefore their testimony is irrelevant, therefore there wouldn't have been any difference in the outcome. And so what they've done is they've essentially taken evidence that is probative on one issue, the trial court's findings of facts that I read at the beginning of the argument, and they apply it to a completely different issue, the issue of whether sexual abuse happened or not, and when they find that it doesn't eliminate the possibility of sexual abuse, they therefore find the evidence wouldn't have been excluded and the outcome of the trial wouldn't have been different. And, you know, I recognize I must be doing something wrong because this is the fourth court I've come to and said here is the value of my evidence, of my new evidence. The argument is persuasive if it weren't in the context of habeas. And the problem is you have to show that it's clearly contrary to clearly established Federal law what happened in the Washington Supreme Court. It's difficult to see where you've come up with that. Well, I have to – I think what I have to show is that it's an unreasonable application of the law. A Federal law. A Federal law. And it is an unreasonable application in part because the facts have never been reliably found. The question here for the question of whether Mr. Devensen is entitled to an evidentiary hearing is whether he's made out a prima facie case of ineffective assistance of counsel. And he has. And if he's made that prima facie case and he's not had a fact-finding hearing, which is undisputed, no court has ever given him a fact-finding hearing, then the question is whether he's entitled to one. And he is at this point. And so the Court can't – the Court unreasonably applies Sixth Amendment law when it doesn't engage in proper fact-finding, where it doesn't – certainly the Washington Supreme Court could have said, assuming the truth and the probative value of all of your post-conviction evidence, we find that the evidence still would admissible. We find that Devensenis still would have been convicted. But they don't say that. Instead, they totally change the calculus. They say you're – they make no mention whatsoever of the grooming plan. There's no discussion of that whatsoever in the Washington Supreme Court's decision. Instead, they simply say these people cannot eliminate the possibility of sexual abuse. That's what they describe as the upshot of Devensenis' new evidence. It is not the upshot. I'm not trying to prove that. Well, no, I think there is a step in between, which is to suggest that if these witnesses deny that the sexual abuse took place, and it is a given that the sexual abuse did take place, then the ability of these witnesses to testify fully as to the relationship between your client and the then-victim – that was V? V.C.? C. V.C. – is impaired, either because they simply weren't there when he was together with her or what. But the fact that they wind up saying something which is now contrary to something that's incontestable moves them back a step and makes that testimony less credible and less persuasive. If that's what they said, I would agree with you. But I dispute the fact that they said the abuse never happened. What they said is we didn't see the abuse happen, which is not surprising. I mean, sexual abuse of young children does not happen in the open. It almost always happens in a private, secure location. What these witnesses say is we didn't see it happen in front of us. But what they say, more importantly, is we didn't see this grooming that V?C. alleges happened, you know, when she was over at the house three to four times a week, every week for a two-year period, where she says this was just normal behavior in the Devencentis household for Mr. Devencentis to walk around dressed this way. So they don't say we definitively say that no sexual abuse happened. What they say is that we didn't see it, and more importantly, definitively, no grooming took place. I think that's where the dispute comes up. At this point, what I'll do is reserve any remaining time for rebuttal. Thank you. May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent. Under the standards imposed under the 2254d, the Federal courts can grant relief only if the State court adjudication was an unreasonable application of Supreme Court holdings. And in this case, the District Court correctly denied relief because the State court's decision was not objectively unreasonable. Addressing the issue of prejudice under the claim of ineffective assistance to counsel, the State courts, on direct appeal, first held that this evidence was properly admitted. Then, in considering the collateral challenge and the affidavits presented to the Court, that those affidavits did not substantially undermine B.C.'s testimony and that, in fact, they corroborated parts of her testimony. And the Court said the result of the hearing would not have been different. The Court held that the evidence was admissible under State law. That ruling of State law is binding on this Court. And in light of that ruling, there can be no showing of prejudice. And the State court's decision to deny relief was objectively reasonable. Counsel for Mr. DeVincente goes through the facts that the trial judge had found that showed these this testimony was admissible as a prior bad act. The fact that the defendant wore either a G-string or bikini underwear. He doesn't dispute that. And B.C.'s testimony demonstrates that. Both her testimony in New York and her testimony in Washington demonstrate that fact. And the affidavits submitted by Mr. DeVincente's do not rebut that fact. Similarly, the Court found that the defendant would comment on his lack of clothes or ask the girls if this bothered them. Again, the affidavits don't dispute these facts. The affidavits of the wife show that she was not even present at this time. And her testimony would have been when I'm there, he would not be allowed to wear these clothes, simply wearing a bikini with nothing else. But the testimony of V.C. and the testimony of the current victim, K.S., was that the wife was not there. That's why he wore these clothes. And V.C. said it. That wasn't it. His daughter, I think that was M. Her declaration is in striking contrast with the testimony that V.C. offered. It is, Your Honor, but that does not affect the admissibility of V.C.'s testimony. Why not? Because the ---- Or why doesn't it affect the persuasiveness of V.C.'s testimony? I mean, V.C. tells a pretty outrageous story. In terms of the parts that highlight the grooming similarity, which the trial court has to find in order to decide that what happened in New York is relevant to what's alleged to have happened here, and taking that the fact of sexual assault is not disputed by Petitioner, Petitioner certainly does dispute the grooming element that the trial court found. How is it that these declarations or the purported or expected testimony of these witnesses wouldn't speak to that and potentially persuade a trial court that V.C.'s story is not to be believed? Your Honor, because they ---- First of all, they corroborate key points in her testimony. They corroborate her testimony that the mother wasn't present. The son's affidavit corroborates the point that the defendant actually did wear bikini underwear sometimes when exercising. M's affidavit corroborates the point that he had light blue boxer shorts, which V.C. testified he wore over his bikini underwear at one point. It also corroborates the testimony of V.C. M admitted that V.C. was on an exercise machine with the defendant at one point, and although M denies any touching, she did admit that that occurred. So it may go to the weight that would be given the evidence, but it does not go to the admissibility. And the Petitioner's claim is that if these witnesses had testified at the pretrial hearing, the court would have excluded the evidence. And the State courts have said that the trial judge would not have excluded the evidence, that the evidence was properly admissible under State law. In that ruling on State law, then, it is still true. But the premise of that, though, is the common grooming pattern or scheme, not simply that there was a sexual assault in New York and sexual assault here. So it's that grooming part that I think Petitioner's trying to focus on. And I quite frankly confess that it seems to me that most trial judges are going to let it in anyway, but that's a little bit speculative. Given that V.C.'s story sounds pretty far out there in terms of conduct, if in fact Petitioner's doing all these things with other family members around, it's not irrelevant for the other family members to have a chance to stand up and say, hey, she was barely at our house. She wasn't my best friend. She wasn't there all this time. This just didn't happen that way. Does the trial court maybe suddenly say, well, you know, let me think about this. Is this really a common pattern? Is there grooming going on in New York in the same way? Your Honor, I would say no, because Mr. D. Vincennes at one point admits in his own affidavit to wearing the bikini underwear, taking V.C. to the bedroom, having them each disrobed, and showing her nude pictures. M. admits that. Now, was that the episode of sexual assault itself? Was something preparatory to that? That was one of the episodes of sexual assault. There was also testimony from V.C. both at New York and then 10 years later in Washington which matched her testimonies of being taken to the bedroom by the defendant and the defendant being in a state of partial undress, wearing simply just a bikini underwear with maybe a shirt open. So her testimony, it may have been because of the passage of time, on some points may have been different. But the key point is that he was, when the mother wasn't present, when he was with her, he, the defendant, wore the bikini underwear. Those facts have not been changed by the affidavits. In the State court decision, even if this court were to disagree and believe that the evidence could have been admissible or, excuse me, could have been excluded and would have been excluded, the State court's decision to the contrary is not objectively unreasonable. And because this case comes before the court on habeas review, this court's review is not only deferential, but in the case of an ineffective assistance counsel claim is doubly deferential. And for that reason, relief is not available. Petitioner's counsel argues that he was entitled to an evidentiary hearing in the district court, but the Supreme Court's recent decision in Shryro v. Landrigan, which is cited in our response brief, the mere fact that he has stated a prima facie case of ineffective assistance is not enough. The district court, as the court held in Shryro, can still deny an evidentiary hearing because the court has to look not only whether there's a colorable claim for relief under ineffective assistance counsel, but then apply the standards of 2254D and determine whether or not the State court decision was unreasonable and whether the petitioner could obtain relief on that basis. And the district court correctly determined he could not. Briefly addressing, we've been talking about the issue of prejudice, but briefly addressing the issue of whether counsel's performance was unreasonably deficient, I would simply point out that, again, the wife's affidavit confirms that she was not present during any of these times. So, of course, the defendant would not have been wearing the bikini underwear in front of his wife. He would have been fully dressed. And, in fact, at Supplemental Excerpt to Record 46, V.C. testified in New York that the defendant was fully dressed when his wife was present. So it only occurred when she was absent. So her affidavit really would not have affected the admissibility of V.C.'s testimony. Similarly, his son's affidavit, again, he admitted that when the defendant exercised, he would wear these type of clothing. And V.C. testified that, although his son was present in the house, he was taking a shower at the time some of these activities occurred. So he was not present when this occurred. And then, finally, M's affidavit, she told trial counsel that she really didn't remember much. So although she now comes forward with additional information regarding her version of the events, she told trial counsel, I don't remember much. Trial counsel, based on that, can reasonably conclude that it would not be worthwhile to call her as a witness and instead to focus on the discrepancies between the New York testimony and the Washington testimony and try and impede V.C. that way, rather than calling a witness who didn't remember much and who may have had an obvious bias in favor of the court. Now, I wondered how to take that piece in particular. And I just wondered, is it that she's saying, well, I don't have much memory of whatever occurred, or did she say there wasn't much to remember? I mean, her testimony appears to be, look, she wasn't there that much. These things, this notion that she was over at our house all the time just wasn't true. She wasn't one of my closest friends. So in that context, a response that says, I don't remember much, may be a response that really says there's not much to say because it didn't happen. That's one possible view of the affidavit. The view that the state courts took in looking at this was that she didn't remember much about V.C. and the events that occurred, and the state court viewing this could reasonably determine that counsel acted as a reasonably competent attorney in deciding not to pursue this avenue, but rather to pursue another tact challenging the evidence. And one point that had been made by M in her affidavit was, for instance, well, she wasn't my best friend. Well, maybe she wasn't M's best friend, but V.C. may believe that M was her best friend. And similarly, V.C. testified in New York, for example, that she went to the house not all the time, but on various occasions. And I believe her testimony in Washington was, I went to the house one, two, three times a week, maybe more. So she wasn't saying she was there all the time. What she was saying was when she was there and the wife wasn't there, then the defendant would come out in the bikini underwear, and that's when he would engage in this activity. Because the state court's decision was not objectively unreasonable, Mr. DeVincenis is not entitled to relief, and we would ask that the Court affirm the dismissal of the petition. Thank you. We have some remittal time left. Thank you. The question in this case is not what sexual acts happened between DeVincenis and V.C. The question is not even how did, what immediately preceded the sexual act. In other words, was he wearing underwear or slightly undressed when he sexually abused V.C. The question really is did he groom V.C. over an extended period of time. Now, the State argues today that the testimony of DeVincenis' ex-wife, Barbara, who incidentally is here in the courtroom this morning, is totally irrelevant because she was gone for six weeks. And it stands to reason that during that six-week period of time that Mr. DeVincenis sexually abused V.C. But what she tells to the trial court is a much different story. It's not a story that only lasts six weeks. It's a story that lasts two years. And during that two-year period of time, she says, here's what happened. I got desensitized to what eventually led to sexual activity because he was walking around in full view of everybody, dressed only in his underwear when I was over there, and that became normal to me. And so it didn't seem so strange when eventually the sexual activity happened. The testimony of Barbara, that she was gone, simply supports the idea that during this limited period of time, Mr. DeVincenis took advantage of the fact that she was gone, that it was a crime of opportunity, which doesn't make it admissible under Washington law. And in fact, in this case, the trial court excluded other sexual acts which were not preceded with this same common plan. Regarding the investigation that was conducted, all of the declarations, and there's no contrary declaration, say trial counsel and trial counsel's investigator did not contact me and did not interview me about this. And that includes a declaration from trial counsel's investigator. The one difference, the one fact that is otherwise is the declaration from M, his daughter, who says, I was asked by trial counsel what I remembered about V being over at our house, and I told him not much. Now, it's trial counsel who is supposed to understand the legal test for admissibility and ask probative questions. To say that somehow the witness should have gone further and said, well, you know, counsel, what's important here is whether there's a pattern of grooming, and let me tell you, I can tell you that didn't happen. This investigation is deficient because it never got out of the starting blocks, and if it did, it certainly didn't get out of it very far. The Washington Supreme Court, when it denies an evidentiary hearing and denies the petition, says the upshot of the new evidence is that these witnesses say they didn't see the sexual abuse happen. But then it counters by saying, but none of them can say that it didn't happen. And from that factual predicate, the Court says, because they can't conclusively eliminate the possibility, no ineffectiveness has happened. That's not the upshot, and it has never been the upshot of this evidence. Instead, the upshot of the evidence is that this grooming pattern that makes the evidence admissible, that makes V.C.'s testimony persuasive to the trial judge, and I would remind the Court that this evidence was not admitted simply to prove intent or absence of an accident. This was admitted as modus operandi to prove the current crime. So it wasn't admitted on a limited purpose. It was admitted for essentially any purpose whatsoever other than propensity. And it was the grooming that was the important salient facts. Those facts were not recognized by the Supreme Court. They did not assume the truth of those facts when they denied our request for an evidentiary hearing. And so what I would ask this Court to do is to remand for an evidentiary hearing and direct the district court to make appropriate conclusions after hearing the witnesses testify and judging their credibility about whether they are to be believed or whether V.C.'s or whether their testimony would not reasonably have made a difference in the outcome of Devensenis' case. Thank you very much. Thank you very much for your argument this morning. The case of Devensenis v. Quinn is submitted and we're adjourned. All rise. The case of Devensenis v. Quinn is submitted.
judges: McKeown, Clifton, Schwarzer